## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:07-CV-145 JVB |
| KELLY TURNER and DANIEL E. SCHENK, | ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On February 21, 2007, the Defendants, Kelly Turner and Daniel E. Schenk, were operating one of the Plaintiff, Norfolk Southern Railway Company's, trains when they became involved in an accident with another train. Following the accident, both Defendants separately sued the Plaintiff in Wayne County Michigan Circuit Court pursuant to the Federal Employer's Liability Act ("FELA"), alleging injury and damages resulting from the accident. In turn, the Plaintiff sued the Defendants on March 30, 2007, in this Court for damages allegedly caused by their failure to obey wayside signals.

The Defendants moved to dismiss this case in accordance with Federal Rule of Civil Procedure 12(b)(6) to which the Plaintiff objected. In addition, the Defendants submit that the Court lacks jurisdiction over this case. Having reviewed the parties briefs and accompanying materials, the Court now denies the Defendants' motions.

**A.     Standard for Evaluating a Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true and views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). In order to prevail, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Doherty v. City of Chi.*, 75 F.3d 318, 322 (7th Cir. 1996). Under the Federal Rules of Civil Procedure, the plaintiff need only "set out in [her] complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chi.,* 195 F.3d 950, 951 (7th Cir.1999). However, a plaintiff may not avoid dismissal simply by attaching bare legal conclusions to narrated facts that fail to support her claims. *Strauss v. City of Chi.*, 760 F.2d 765, 767–68 (7th Cir. 1984). The complaint must allege facts that sufficiently set forth the essential elements of a cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.1992). The court may consider all allegations made in the complaint as well as any attachments accompanying the complaint. Fed. R. Civ. P. 10(c).

Insofar as the Defendants object to the Court's jurisdiction, the Court may look beyond the pleadings to determine if it has authority to hear the case. Otherwise, the challenge is subject to the same principles as a motion pursuant to Rule 12(b)(6).

2

B.       **Factual Allegations**

On February 21, 2007, the Defendants were the crew on board eastbound Norfolk

Southern Train 38E. Turner was the engineer and Schenk was the conductor. Turner belonged to

the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), a rail labor union, and was

subject to the Plaintiff and the union's Collective Bargaining Agreement ("CBA"). Schenk also

belonged to BLET. However, because he was doing the conductor's job on board Train 38E, his

work that day was governed by the CBA between the Plaintiff and the United Transportation

Union. As the crew of Train 38E, Turner and Schenk were responsible for its safe operation.

As Train 38E approached the automatic signal at CP414 near Peddler's Village Road in

Goshen, Indiana, the signal designated an "approach" sign, which required the Defendants to

slow down to medium speed and be prepared to stop at the next signal at CP412. The Defendants

failed to slow down and failed to stop Train 38E in advance of the stop signal located at CP412.

Consequently, Train 38E collided with another of the Plaintiff's trains, a westbound Norfolk

Southern Train 681B021. The collision caused both locomotives and sixteen rail cars to derail

near Indiana Avenue in Goshen. The Plaintiff alleges that the accident was caused by the

Defendants' negligence.

As a result of the accident, the Plaintiff sustained damages to its locomotives, rail cars,

tracks, right-of-way and maintenance-of-way structures, and communication and signal

equipment. The Plaintiff also suffered the expense of rerailing the trains and transporting the

locomotives for repair and experienced loss because it was unable to use the damaged

locomotives. Furthermore, the Plaintiff incurred costs in removing the petroleum that spilled

during the accident and restoring the site of the spill. Finally, the Plaintiff paid for the losses to

adjacent landowners and the losses of its customers whose shipment of freight had been delayed.

**B.      The Defendants' Contentions**

The Defendants advance three reasons why this case should be dismissed. First, the Defendants contend the Plaintiff's lawsuit is a "minor dispute" under the Federal Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., that mandates arbitration and, thus, preempts this case. The Defendants base their argument on the following clause in the CBA between BLET and the Plaintiff: "Engineers will not be assessed fines by the company." They submit that the prohibition against fines also includes civil judgments and, in any case, a disagreement as to the meaning of "fine" requires an interpretation of the CBA, which must be decided through the Plaintiff's internal resolution procedures.

Second, the Defendants submit that the Plaintiff's lawsuit in this district violates their substantive federal rights to select the forum in which their FELA claims should be litigated.

Finally, the Defendants maintain that, contrary to section 55 of FELA, the Plaintiff's lawsuit constitutes a "device" designed to limit its liability to them, and that the case should be dismissed.

**C.      Discussion**

**(1)      *The Issue of Preemption***

The Court must decide whether the Plaintiff's state-law action constitutes a minor dispute under the RLA and thus is preempted by the federal statute requiring compulsory and binding arbitration before the adjustment board. *See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*,

491 U.S. 299, 302 (1989) ("[T]he minor dispute category is predicated on § 2 Sixth and § 3 First

(i) of the RLA, which set forth conference and compulsory arbitration procedures."). "Minor

disputes grow 'out of grievances or out of the interpretation or application of agreements

covering rates of pay, rules, or working conditions,' 45 U.S.C. § 151a, and they 'involve

controversies over the meaning of an existing collective bargaining agreement in a particular fact

situation.'" *Monroe v. Mo. Pacific R.R. Co.*, 115 F.3d 514, 516 (7th Cir. 1997) (citing *Haw.*

*Airlines, Inc. v. Norris*, 512 U.S. 246, 252–54 (1994)). "The distinguishing feature of [a minor

dispute] is that the dispute may be conclusively resolved by interpreting the existing [CBA],"

*Consol. Rail Corp.*, 491 U.S. at 305, because it involves "duties and rights created or defined by

the CBA," *Haw. Airlines, Inc.*, 512 U.S. at 258.

On the other hand, an action involving "rights and obligations that exist independent of

the CBA" does not constitute a minor dispute and is not preempted by the RLA. *Id.* at 260.

"[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and

state law, on the other, would require addressing precisely the same set of facts, as long as the

state-law claim can be resolved without interpreting the agreement itself, the claim is

'independent' of the agreement." *Id.* at 262. Moreover, a mere reference to the CBA will not

preempt a state claim: "when the meaning of contract terms is not the subject of dispute, the bare

fact that a collective-bargaining agreement will be consulted in the course of state-law litigation

plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124

(1994); *see also Loewen Group Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir.1995)

("[N]ot all cases which tangentially touch collective bargaining agreements call for . . .

preemption.").

Since minor disputes must be redressed through the RLA's arbitral mechanism, a finding that the Plaintiff's claims require interpretation of BLET's CBA would necessitate a dismissal of this case, but only as to Turner. BLET applies only to Turner and not Schenk, who at the time of the accident was under the Plaintiff's agreement with United Transportation Union. Schenk does not argue that the latter agreement protects him from the Plaintiff's lawsuit. Therefore, the discussion regarding the effect of BLET's CBA on this litigation relates only to Turner.

The Plaintiff can sue Turner in this Court only if its claims are independent of BLET's CBA and require no interpretation as to any of its terms; otherwise, the Plaintiff must seek redress through the RLA's arbitral mechanism. Turner insists that the clause in the CBA—"Engineers will not be assessed fines by the company" (Def.'s Ex. 1, Agreement Between Norfolk Southern Railway Company at 123; DE 13-3.)—forestalls the Plaintiff's case because a judgment against Turner on the Plaintiff's property damages would be equivalent to a fine. In support of this contention, Turner cites the Nevada Supreme Court's decision in *Union Pac. R.R. Co. v. Harding*, 114 Nev. 545 (1998).

The Plaintiff, on the other hand, asserts that "[t]here is simply nothing in [the] CBA that must be interpreted for [the Plaintiff's] claims against the Defendant to proceed." (Def.'s Resp. at 5; DE 13.) It submits that in *Kirk v. Norfolk Southern Railway Co.*, Case No. 3:00-CV-273 (N.D. Ind. Sept. 17, 2001), a Northern District of Indiana court has already determined in a nearly identical case that the facts underlying the claim for negligence can be decided without interpreting the CBA.

In *Kirk*, a railroad conductor, Aaron Kirk, sued Norfolk Southern under FELA, and the railroad counterclaimed for property damages it allegedly sustained as a result of his negligence.

6

Kirk moved to dismiss the counterclaim as preempted by the RLA, arguing that the counterclaim was an impermissible fine under the applicable CBA and that resolution of whether the CBA prohibits such a fine would have necessarily involved interpretation of the agreement. Judge Miller found Kirk's argument unpersuasive and determined that the Plaintiff's counterclaim would not require interpretation of the CBA. *Kirk*, at *4.

The Court will follow Judge Miller's precedent. Just as in *Kirk*, Turner's negligence, if any, can be decided without reference to BLET's CBA. Moreover, imposition of judgment does not require the Court to interpret the CBA: Turner's bare suggestion that the language prohibiting fines—"Engineers will not be assessed fines by the company"— also prohibits judicial

judgments against them is insufficient to preclude the Court's jurisdiction over the case. The reference to fines in the CBA is so remote from the notion of judicial judgment that concluding that one cannot mean the other requires no interpretation. Singling out a portion of a CBA that does not relate to the subject matter of the case is insufficient to strip this Court of jurisdiction, and "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 65 F.3d at 1423.

The Defendants' reliance upon *Harding* does not persuade the Court otherwise. In *Harding*, a Union Pacific freight train collided with another train. Subsequently, Union Pacific filed a complaint in Nevada state court against its two employees, engineer and conductor who were involved in the accident, for lost profits and damage to the property. The company alleged that the two employees had failed to heed a stop signal and caused the accident. The conductor moved to dismiss Union Pacific's complaint on the grounds that its claim was preempted by the

7

LRA. The district court granted the conductor's motion to dismiss and Union Pacific appealed the case all the way to the Nevada Supreme Court. *Harding*, 114 Nev. at 546–47.

On appeal, the conductor argued that the district court correctly dismissed the case because deciding the merits of Union Pacific's claims would have necessarily required interpretation and application of Rule 103 of the CBA which stated that "Conductors will not be obliged to pay fines for loss or damage to equipment." *Id.* at 548. The conductor maintained that, so long as the parties disagreed whether this provision applied to the imposition of civil damages, the case had to be settled internally or proceed to binding arbitration before the National Railroad Adjustment Board.

The Nevada Supreme Court agreed with the conductor that the interpretation of the word "fines" was substantially involved in that case: "If the language . . . encompasses civil damages, it would appear that Rule 103 [of the CBA] conclusively resolves the matter. Therefore, we conclude that the district court properly dismissed [Union Pacific's] state law claims against [the conductor] on the basis of the RLA preemption." *Id.* at 549.

*Harding* differs from this case in one crucial aspect. Unlike BLET's CBA, the language regarding fines was specific in *Harding*'s CBA: "Conductors will not be obliged to pay fines for loss or damage to equipment." This language reduces the proximity between a fine and final judgment to allow a reasonable inference that one could mean the other. But in this case, a suggestion that BLET's prohibition to assess fines against engineers also prohibits law suits against engineers for damage to the Plaintiff's property has no reasonable nexus. Again, mere reference to the CBA does not destroy the Court's jurisdiction. Accordingly, *Harding* does not control this case. The Court finds that it has jurisdiction over this case.

8

(2)    *Choice of Forum*

The Defendants argue that the Plaintiff's Complaint violates their right to choose a forum for their FELA claims. They cite numerous cases confirming that they have a right to file their claims in the forum of their choice and recognize that the Plaintiff can challenge that forum. But nowhere do they explain how the filing of the Complaint for property damages in this Court deprived them of their right to choose the forum to litigate their FELA claims. In fact, the Defendants' FELA claims against the Plaintiff are already pending in the forum of their choice—the Circuit Court for the Third Judicial Circuit in Wayne County, Michigan. Since Michigan is not a compulsory counterclaim state, the Plaintiff is free to litigate a counterclaim in a separate action, in the forum of its choice. *See Salem Indus., Inc. v. Mooney Process Equip. Co.*, 175 Mich. App. 213, 216–15 (Mich. Ct. App. 1988). The Defendants present no authority and no compelling reason to think otherwise. Therefore, the Court finds no FELA violation in the Plaintiff's choice to sue the Defendants in this Court.

(3)    *Title 45 U.S.C. § 55*

Finally, the Defendants insist that the Plaintiff's lawsuit constitutes a "device" designed to limit Plaintiff's FELA liability to Defendants, in violation of section 55 of FELA. They argue that FELA's liberal language prevents railroad companies from suing for property damages litigants who are seeking benefits under FELA. They find justification for their position in the following language of the statute: "Any contract, rule, regulation, or *device whatsoever*, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 U.S. § 55 (emphasis added). The

Defendants believe "that under the plain and ordinary meaning of the language of this statute, and by application of the fundamental rules of statutory construction, the railroad's property damages claims against them may not be maintained," (Defs.' Br. at 18.) because the Plaintiff's potential recovery of property damages would offset their FELA damages, (*Id.* at 21.). At the same time, they recognize that their position is contrary to the law in this district, (*See id.* at 18–19.) and that most of their arguments derive from Judge K.K. Hall's twenty-year-old dissenting opinion in *Cavanaugh v. Western Maryland Railroad Company*, 729 F.2d 289 (4th Cir. 1984).

The Defendants present no authority for this Court to stray from the precedent in this district. *See Kirk*, *7–8 (holding that railroad's counterclaim did not violate FELA); *Norfolk and W. Ry. Co. v. Sustek*, Case No. 3:93-CV-214 (N.D. Ind. May 28, 1993) (finding that FELA did not rescind the common law rule permitting an employer to sue his employee for damage to the employer's property). In fact, the Defendants position is contrary to the explicit case law in the First, Fourth, and Eighth Circuits. *See Cavanaugh*, 729 F.2d 293–94 (finding "nothing in either section 5 or section 10 of the FELA from which it can be reasonably implied that Congress intended the illogical result of proscribing the filing of a counterclaim by the railroads in an FELA case to recover for property damages sustained by reason of the sole negligence of the plaintiff-employee in that action"); *Sprague v. Boston & Marine Co.*, 769 F.2d 26, 29 (1st Cir. 1985) ("We agree with [*Cavanaugh*] analysis and note that the majority of other courts that have considered this question express the same view."); and *Nordgren v. Burlington N. R.R. Co.*, 101 F.3d 1246 (8th Cir. 1997) ("Considering the phrase 'any device whatsoever' in context, we conclude that its plain meaning does not encompass a railroad's common-law based

counterclaim for property damages."). In light of this clearly established law, the Court agrees

with the Plaintiff.


**D.      Conclusion**

For these reasons, the Court Denies the Defendants' Motions to Dismiss [DE 6 and 7],

and this case may proceed forward.

SO ORDERED on October 9, 2007.


  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT COURT JUDGE
HAMMOND DIVISION

11